UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| DANIEL KENNEDY, ET AL. | CIVIL ACTION |
| v. | NO. 18-12084 |
| BRASKEM AMERICA, INC., ET AL. | SECTION "F" |


ORDER AND REASONS

Before the Court is the defendants' motion for summary judgment invoking an immunity defense under the Texas Workers' Compensation Act. For the reasons that follow, the motion is DENIED without prejudice.

**Background**

This lawsuit arises from a construction worker's claim that he was severely injured after being struck by a large piece of mud which caused him to fall. Daniel Kennedy, who lives in Mississippi, alleges that he was injured on December 2, 2017 while working on a construction site at a petrochemical facility, located in LaPorte, Texas. The site and facility are owned by Braskem America, Inc., which is incorporated in Delaware with its principal place of business in Pennsylvania. At the time of the incident, Linde Engineering North America, Inc., which is incorporated in

1

Delaware with its principal place of business in Oklahoma, was the contractor on the project involving engineering, procuring, and constructing a polypropylene plant for Braskem. Kennedy worked on the site as an employee of an alleged project subcontractor, Cajun Deep Foundations, LLC.

On June 1, 2017, Braskem contracted with LENA to act as the general contractor on the project. Several months later, the original Engineering, Procurement, and Construction Contract (EPC Contract), which is governed by Texas law, was amended on October 1, 2017. The amendment deleted the parties' prior agreement on insurance, and replaced it with an Owner Controlled Insurance Program (the "OCIP"). By the OCIP, Braskem provided workers' compensation insurance coverage for LENA, all tiers of subcontractors enrolled in the OCIP, and their employees for on-site work on the project. Article 18.1.1 of the Amended EPC Contract provides:

> Owner has arranged for the Work to be performed under this Contract to be insured under its OCIP Program. The OCIP is an insurance program that insures Owner eligible and enrolled Contractor and its Subcontractors, and other Owner-designated parties for Work performed at the covered Project Site. Certain contractor and subcontractors are excluded from this OCIP and these parties are identified in Exhibit C-11, Schedule 001. Coverage under the OCIP includes Workers Compensation and Employers Liability, General Liability and Umbrella Liability (excluding automobile, rental equipment (owned

2

or third party), aircraft, watercraft, professional, and environmental liability) and apply only to the operations of Contractor and its Subcontractor of any tier conducted at or emanating from the specified Project Site. Such OCIP insurance does not apply to manufacturing, fabrication, or other operations at Contractor's regular offsite main or branch office, warehouse, or similar places of business. Contractor shall enroll in OCIP provided by Owner. The provisions of this Article 18.1.1 shall apply to Contractor and any Subcontractors of any tier to the extent enrolled in and covered by the OCIP unless otherwise agreed upon by the Parties. **It is the responsibility of the Contractor acting as Owner's Construction Manager and Prime Contractor to include the OCIP requirements in all subcontracts and to insure that any lower tier contracts include the OCIP requirements.**

(emphasis added). Liberty Mutual was the insurance carrier for the workers' compensation coverage provided under the OCIP.

Shortly after Braskem established the OCIP, on October 17, 2017, Cajun Constructors, LLC, allegedly one of the subcontractors on the project, enrolled in the OCIP. On November 13, 2017, Liberty Mutual issued to LENA Policy Number WA2-65D-292072-037, which is governed by Texas Workers' Compensation law, providing LENA with workers' compensation coverage insurance from October 1, 2017 to April 30, 2020. Also, on November 13, 2017, Liberty Mutual issued to Cajun Constructors, LLC, Policy Number WA2-65D-292072-047 (the "Cajun Constructors Policy") providing Cajun Constructors

with workers' compensation coverage from October 17, 2017 to April 30, 2020.

On December 2, 2017, it is alleged that a large piece of mud fell onto Kennedy's head while he was working for Cajun Deep at the project site. As a result, he fell to the ground, injuring his head, neck, thoracic and lumbar spine, ankle, and knee.

Five days after the incident, on December 7, 2017, a claim was submitted to Liberty Mutual under the Cajun Constructors Policy in connection with Kennedy's alleged injury. In processing Kennedy's claim, it was discovered that Cajun Deep was not enrolled in the OCIP. Nevertheless, Liberty Mutual agreed to provide coverage under the Cajun Constructors Policy.[1] Liberty Mutual insured Cajun Deep under the Cajun Constructors Policy, effective November 20, 2017, which is allegedly the date on which Cajun Deep became a subcontractor on the project.[2]

On November 5, 2018, Kennedy filed a "disputed claim" for workers' compensation in Louisiana.[3] Three weeks later, on November 21, 2018, Kennedy filed an Employee's Claim for

---

[1] Liberty Mutual determined that Cajun Constructors and Cajun Deep were combinable and should be insured under a single workers' compensation policy.
[2] There is no subcontract of record, but the parties do not appear to dispute that Cajun Deep was a subcontractor on the project.
[3] Cajun Deep and Liberty Mutual have challenged subject matter jurisdiction in the Louisiana Office of Workers' Compensation proceeding because, they argue, the incident occurred in Texas and Kennedy performed all of his work in Texas.

Compensation for a Work-Related Injury or Occupational Disease with the Texas Department of Insurance, Division of Workers' Compensation. On November 30, 2018, Kennedy and his wife, Brandi Smith, sued Braskem America, Inc. and Linde Engineering North America, Inc. in this Court, alleging negligence and premises liability. The defendants now move for summary judgment that they are immune from suit.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is

5

appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory

facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

II.

A.

"A federal court sitting in diversity jurisdiction must apply the choice of law rules of the forum state when a conflict of law exists." Burdett v. Remington Arms Co., L.L.C., 854 F.3d 733, 735 (5th Cir. 2017) (quoting Ingalls Shipbuilding v. Federal Ins. Co., 410 F.3d 214, 230 (5th Cir. 2005)).[4] Neither side identifies an actual conflict between Texas and Louisiana law. Nevertheless, the defendants' motion is predicated on Texas law, the only contracts of record choose Texas law, and a perfunctory choice of law analysis indicates that Texas law applies to the issue presented.

When there is a conflict of law, Louisiana Civil Code Article 3515 states that the applicable law is "the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code Ann. art. 3515. Louisiana

---

[4] A conflict of law is a legal question, which the court determines. Santovenia v. Confederation Life Ass'n, 460 F.2d 805, 809 (5th Cir. 1972) (quoting Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)).

7

Civil Code Article 3542 sets out the general conflict of law provision for tort claims. See La. Civ. Code Ann. art. 3542.[5]

Here, the alleged tortious conduct and injury occurred in Texas. For the purposes of resolving the defendants' motion invoking Texas immunity, the Court will apply Texas law.

III.

The defendants seek summary relief solely on the ground that they are immune from this negligence suit. They invoke the Texas Workers' Compensation Act's exclusive-remedy defense, submitting that they are immune from this tort suit because Braskem is the plaintiff's statutory employer and LENA is Kennedy's statutory "co-employee." See Tex. Lab. Code Ann. § 406.123. The plaintiffs

---

[5] Louisiana Civil Code Article 3542 provides:
> Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of:
>
> (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and
>
> (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

La. Civ. Code Ann. art. 3542. No party identifies a more specific conflict of law codal provision that might apply instead of article 3542.

contend that the defendants have not shown entitlement to summary judgment.  On this record, the Court agrees.

*A.*

Texas courts, in construing contracts, ascertain and give effect to the parties' intentions as expressed in the contract itself. Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am., 341 S.W.3d 323, 333 (Tex. 2011).  In determining the parties' intent, the Court "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." Id. (quoting J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003)) (internal quotation marks omitted).

*B.*

The Texas Labor Code provides:

(a) A general contractor and a subcontractor may enter into a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor.

(e) An agreement under this section makes the general contractor the employer of the subcontractor and the subcontractor's employees only for purposes of the workers' compensation laws of this state.

Tex. Lab. Code Ann. § 406.123(a), (e).  And, the Texas Labor Code likewise articulates the TWCA's exclusive-remedy defense:

9

> Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.

Tex. Lab. Code Ann. § 408.001(a).

The TWCA's exclusive-remedy defense allows employees to recover workers' compensation benefits promptly and without proving liability, Austin Bridge & Rd., LP v. Suarez, 556 S.W.3d 363 (Tex. App. 2018); meanwhile, it exempts employers and their employees from negligence liability. See Tex. Lab. Code Ann. § 408.001(a). A written agreement, which provides workers' compensation insurance coverage, between a general contractor and subcontractor is "absolutely necessary to qualify for immunity." Briggs v. Toyota Mfg. of Tex., 337 S.W.3d 275, 284 (Tex. App. 2010). That is, for the TWCA's deemed employer/employee relationship to extend throughout all tiers of subcontractors, the lower-tier contracts must incorporate the workers' compensation insurance coverage included in the original contract. See Austin Bridge & Rd., LP, 556 S.W.3d at 386.

*C.*

The defendants submit that Braskem is the plaintiff's statutory employer and LENA is Kennedy's statutory "co-employee," therefore, both are immune from suit in tort under the TWCA's

exclusive-remedy defense. To support their invocation of the TWCA's exclusive-remedy defense, the defendants point to these items in the summary judgment record: Cajun Constructors' and Cajun Deep's OCIP enrollment forms and the Amended EPC Contract executed between Braskem and LENA. But the defendants' submission falls short of meeting the substantive requirements of Texas law, and thus likewise fails to meet their burden on summary judgment.

Consistent with Texas law's requirement that <u>written</u> subcontracts incorporate a prime contract's workers' compensation coverage, the OCIP provision in the Amended EPC Contract between Braskem and LENA provides:

> It is the responsibility of [LENA] acting as [Braskem's] Construction Manager and Prime Contractor to include the OCIP requirements in all subcontracts and to insure that any lower tier contracts include the OCIP requirements.[6]

Conspicuously absent from the record is any subcontract between LENA and any subcontractor such as Kennedy's employer, Cajun Deep.[7] The defendants are not entitled to summary judgment on their immunity defense on this record. To be sure, "the specific contractual relationships among the parties [are] critical" to

---

[6] The EPC Contract, in its Preamble section, defines LENA as "Contractor" and Braskem as "Owner." The term "general contractor" includes the term "prime contractor." Tex. Labor Code Ann. § 406.121(1).

[7] The defendants spill ink attempting to persuade the Court that Cajun Constructors and Cajun Deep are indistinguishable entities for the purpose of OCIP enrollment and, by extension, their statutory immunity defense. There being no written subcontract in the record, the Court need not reach this argument.

resolve this immunity defense. Maxim Crane Works, L.P. v. Zurich Am. Ins. Co., No. CV H-18-3667, 2019 WL 2524244, at *11 (S.D. Tex. June 19, 2019).

For the defendants to find safe harbor in the exclusive-remedy defense, Texas law mandates a written agreement incorporating the OCIP program between Braskem or LENA and the relevant subcontractor/employer. See Briggs, 337 S.W.3d at 283 (citing Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 436 (Tex. 2009)). Absent a written agreement, the defendants fail to prove that they are the plaintiff's statutory employer, or that the TWCA's "deemed employer/employee relationship extends throughout all tiers of subcontractors." See Tex. Lab. Code Ann. § 406.123(a), (e); Maxim Crane Works, L.P., 2019 WL 2524244, at *11 (S.D. Tex. June 19, 2019)(citing Austin Bridge & Rd., LP, 556 S.W.3d at 386 (Tex. App. 2018)); see also Etie v. Walsh & Albert Co., 135 S.W.3d 764, 767-68 (Tex. App. 2004); Hunt Const. Grp., Inc. v. Konecny, 290 S.W.3d 238, 240 (Tex. App. 2008).[8]

The plaintiffs state that a written subcontract between LENA and Cajun Constructors was produced in discovery. Which begs the question: Why has it not been filed into the summary judgment

---

[8] This requirement of Texas law was expressly incorporated into the Amended EPC Contract: Braskem required LENA to incorporate the OCIP requirements into any lower-tier contracts.

12

record? The defendants suggest that the Amended EPC Contract, along with enrollment forms,[9] are sufficient to establish their immunity defense. Texas law and the defendants' own prime contract require more. That the Amended EPC Contract called for OPIC enrollment and put the onus on LENA "to include the OCIP requirements in all subcontracts and to insure that any lower tier contracts include the OCIP requirements" and, further, that certain subcontractors including Kennedy's employer completed enrollment forms for participation in the OPIC, however belatedly, is necessary but not sufficient to comply with the mandate of Texas law. By failing to submit any "written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor," the defendants have not satisfied their burden of establishing the existence of a written agreement between either of them and any subcontractor.[10]

---

[9] Cajun Constructors apparently completed an enrollment form for participation in the OCIP on October 17, 2017, whereas Cajun Deep enrolled on December 6, 2017.

[10] The defendants fail to show how Cajun Deep's enrollment in the OCIP and the Amended EPC Contract's establishment of the OCIP are sufficient to conclusively establish the existence of a written agreement providing workers' compensation insurance coverage between Braskem or LENA and the relevant subcontractors. The case literature uniformly requires a written agreement between the general contractor and subcontractor. See Maxim Crane Works, L.P., 2019 WL 2524244, at *11; Austin Bridge & Rd., LP, 556 S.W.3d at 382-83; Briggs, 337 S.W.3d at 283-85; Hunt Const. Grp., Inc., 290 S.W.3d at 244; Berkel & Co. Contractors, Inc. v. Lee, 543 S.W.3d 288, 296 (Tex. App. 2018), reh'g granted in part (Jan. 23, 2018). If there is contrary authority dispensing with the written subcontract

Accordingly, the defendants' motion for summary judgment is hereby DENIED without prejudice.[11]

New Orleans, Louisiana, August 7, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

requirement in favor of generic enrollment forms, the defendants fail to invoke such authority.

[11] Any future submissions must fully brief <u>conflicts</u> of law, if any, and contain all relevant evidence.